**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WALGREEN CO. | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-307-ACR |
| | ) | |
| | ) | |
| HUMANA HEALTH PLAN, INC. | ) | |
| HUMANA INSURANCE COMPANY, and | ) | |
| HUMANA PHARMACY SOLUTIONS, INC. | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**WALGREENS' BRIEF IN RESPONSE TO THE COURT'S INQUIRY REGARDING**
**D.C. RULES OF PROFESSIONAL CONDUCT 1.7(b)(4) AND 1.7(c)**

<u>**EXHIBIT INDEX**</u>

| Exhibit Number | Exhibit Title |
|---|---|
| Exhibit A | Feb. 11, 2021 email chain between R. Robinson and D. Schnorrenberg |
| Exhibit B | Feb. 16, 2021 email chain between R. Robinson and D. Schnorrenberg |
| Exhibit C | Humana amended privilege log (Aug. 30, 2022) |
| Exhibit D | May 31, 2023 email chain between S. Coleman and J. Kingsolver |

Walgreen Co. (Walgreens) submits this brief at the Court's invitation to assist the Court in determining if, separate from the claims that Walgreens has against Crowell & Moring LLP (Crowell), including under D.C. Rule of Professional Conduct 1.9, pending before the D.C. Superior Court, Crowell has a conflict in serving as counsel to Humana in this matter under D.C. Rules of Professional Conduct 1.7(b)(4) and 1.7(c).

As set forth below, because Walgreens has alleged as a basis for its petition to vacate that Crowell previously advised Walgreens on whether Walgreens' Prescription Savings Club (PSC) prices affected its usual and customary (U&C) prices and then later switched sides and solicited Humana to sue Walgreens on the same issue, it does appear that, pursuant to D.C. Rule of Professional Conduct 1.7(b)(4), Crowell's professional judgment in representing Humana may be compromised by its own interests.  With respect to Rule 1.7(c), given Crowell's actions, including its initial denial that it ever represented Walgreens, there is reason to doubt that Crowell provided Humana with sufficient information to enable it to provide informed consent.  And even if Humana did provide informed consent, Rule 1.7(c)(2) requires that, to continue its representation, a lawyer must "reasonably believe[] that the lawyer will be able to provide competent and diligent representation to each affected client."  This appears to be an objective inquiry and, given that Crowell's individual interests may situate it adversely to Humana, it seems unlikely that Crowell could objectively hold a reasonable belief that it is able to provide Humana with "competent and diligent representation" in this matter.

## FACTUAL BACKGROUND

To assist the Court's inquiry under D.C. Rules of Professional Conduct 1.7(b)(4) and 1.7(c), Walgreens provides the following background information:

A.      **Crowell's Prior Representation of Walgreens**

In 2008 and 2009, Crowell provided Walgreens with legal advice that included the potential effect of PSC prices on Walgreens' U&C prices, as summarized below:[1]

- In the fall of 2008, Walgreens retained Crowell to advise it on legal issues related to (i) a proposed pharmacy discount card, and (b) Walgreens' PSC.  ECF No. 30-11, Ex. 11 to Pet. to Vacate, Decl. of S. Couffer (March 1, 2021) (Couffer Decl.) ¶¶ 4-5.

- On September 25, 2008, Crowell provided Walgreens with legal advice regarding the proposed pharmacy discount card and the impact of pharmacy discount cards on Walgreens' reporting of U&C prices to third-party payers (the Privileged Memorandum).  *Id.* ¶ 6.

- Walgreens also asked Crowell to provide a second memorandum relating to a proposed enhancement to PSC and its impact on Walgreens' reporting of U&C prices.  *Id.* ¶ 7.

- In October 2008, Walgreens asked Crowell to review a draft letter prepared by another outside counsel related to an investigation by the State of Connecticut, which had taken the position that, under Connecticut law, Walgreens was required to provide PSC prices as its U&C prices to Connecticut Medicaid.  *See* ECF No. 30-14, Ex. 14 to Petition to Vacate; ECF No. 30-15, Ex. 15 to Pet. to Vacate (Crowell time records stating: "Review draft letter to CT Medicaid regarding U&C rates for Walgreens"; "Review draft response to CT and background materials"; and "Evaluate CT response").

- Finally, Walgreens asked Crowell to provide a legal survey related to healthcare and pharmaceutical discount-card programs, which Crowell provided in May 2009.  ECF No. 30-11, Couffer Decl. ¶ 8.

These facts, in addition to others obtained from the Walgreens' case file that Crowell eventually surrendered to Walgreens in discovery in the D.C. Superior Court action, form the basis for Walgreens' argument, pursuant to D.C. Rule of Professional Conduct 1.9, that Crowell breached its fiduciary duty to Walgreens by switching sides and soliciting Humana to sue Walgreens in an arbitration relating to Walgreens' reporting of its retail prices, instead of its PSC prices, as its U&C

---

[1] In this brief, Walgreens provides a general description of its communications with Crowell and Crowell's advice to Walgreens without providing details of those communications to maintain the confidentiality and privilege of those communications.

prices (the <u>Arbitration</u>).  Walgreens' claims against Crowell, including its breach of fiduciary duty claim, are currently before the D.C. Superior Court (the <u>D.C. Superior Court Action</u>).

### B.     Walgreens' and Crowell's Response to the Discovery of Crowell's Conflict

On February 10, 2021, Walgreens' outside counsel, Reed Smith LLP (<u>Reed Smith</u>), alerted Crowell lawyers of Crowell's prior work for Walgreens, and followed up the day after that stating that Crowell had a conflict "related to Walgreens' status as a former client of" Crowell.  *See* ECF No. 30-33, Ex. 33 to Pet. to Vacate, Feb. 16, 2021 email from R. Robinson to D. Schnorrenberg; Ex. A, Feb. 11, 2021 email chain between R. Robinson and D. Schnorrenberg; *see also* Ex. 5 to Corrected Opp'n to Mot. for Preliminary Injunction (<u>Opp'n to PI</u>) (submitted Apr. 29, 2021; filed May 6, 2021), Superior Court of the District of Columbia, Civ. No. 2021 0861, Declaration of D. Schnorrenberg ¶¶ 3-4 (<u>Schnorrenberg Decl.</u>).[2]  In response, Crowell took the position that its former client was not Walgreens, but rather Walgreens Health Initiatives, Inc. (<u>WHI</u>), a pharmacy benefit manager previously owned by Walgreens and sold to a third party in 2011.  *See* Ex. B, Feb. 16, 2021 email chain between R. Robinson and D. Schnorrenberg; *see also* Schnorrenberg Decl. ¶ 5.  The record, however, confirms that Crowell advised Walgreens.  *See, e.g.*, ECF No. 30-11, Couffer Decl.; ECF No. 30-15 (Crowell attorney Arthur Lerner's time record from October 28, 2008, stating: "Review draft letter to CT Medicaid regarding U&C rates **for Walgreens**.") (emphasis added).  In an April 22, 2021 declaration, Crowell abandoned its prior position and admitted it had a prior client relationship with Walgreens, stating that it "did work for Walgreens in June 2008, and then September, October and November 2008," as well as in January, April, May, and June of 2009.  Schnorrenberg Decl. ¶ 24.

---

[2] Although the Court has received this document through Walgreens' *in camera* submission, Exhibit 5 to the Opp'n to PI was also filed on the public docket with no redactions.

In February 2021, when Crowell incorrectly claimed that it had never represented Walgreens, Crowell also appeared to have been in discussions with Humana, potentially about the conflict issue Walgreens had raised.  Humana's privilege log in the D.C. Superior Court Action has an entry from February 16, 2021, only six days after Reed Smith informed Crowell of the conflict and the same day Crowell took the position with Walgreens that it had represented WHI, not Walgreens.  Ex. C**,** Humana amended privilege log (Aug. 30, 2022), line 252.  The privilege log has 20 entries dated from February 16, 2021 to March 5, 2021, including communications between Humana and its counsel in the Arbitration, Crowell partner Keith Harrison.  *Id.* at lines 233-252.  Walgreens does not know whether Crowell informed Humana at this time that it provided legal advice to Walgreens, or whether Crowell falsely told Humana, as it had told Walgreens, that Crowell had only provided legal advice to WHI, not Walgreens.

### C.     Walgreens Raised Crowell's Conflict With the AAA and the Arbitrator

In addition to raising Crowell's conflict to the American Arbitration Association, Walgreens discussed the conflict issue with the arbitrator during a March 4, 2021 hearing.  During the hearing, Walgreens made clear that it was reserving its right to argue that any arbitral award would need to be vacated based on Crowell's conflict, and the arbitrator noted that the proceedings were "potentially under some cloud."  ECF No. 30-34, Ex. 34 to Pet. to Vacate, Decl. of D. Bender (<u>Bender Decl.</u>) ¶¶ 5-6, 9.  Walgreens reiterated its objection to Crowell's participation before the liability hearing in the Arbitration, ECF No. 30-3, Ex. 3 to Pet. to Vacate, Excerpt of Phase I Hr'g Tr. at 11:2-13, yet Crowell did not withdraw.

### <u>DISCUSSION OF RULE 1.7(b)(4) AND CROWELL'S CONDUCT</u>

### A.     Because Crowell's Probity Is In Question, Its Representation Of Humana Implicates Rule 1.7(b)(4)

Crowell's conduct implicates D.C. Rule of Professional Conduct Rule 1.7(b)(4), which

provides that "a lawyer shall not represent a client with respect to a matter if . . . [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interest in . . . the lawyer's own financial, business, property, or personal interests."  Comment 11 to Rule 1.7(b)(4) states that "[t]he lawyer's own interests should not be permitted to have an adverse effect on representation of a client."  Specifically, Comment 11 states that, "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."

Based on Walgreens' allegations, Crowell's "probity" is "in serious question."  The "undue means" argument that Walgreens has raised in its petition under Federal Arbitration Act § 10(a)(1) relates directly to Walgreens' allegation in the D.C. Superior Court Action that Crowell breached its fiduciary duty to Walgreens by advising Walgreens on the PSC and its effect on U&C prices and then switching sides and soliciting Humana to bring a claim against Walgreens on essentially the same issue.  If Crowell did breach its fiduciary obligation to Walgreens by switching sides and making a pitch to its new client that "awakened [Humana] from its slumber," (ECF No. 30 ¶ 47; ECF No. 30-7 at 55), resulting in litigation that otherwise would never have happened, that conduct places the probity of Crowell's conduct "in serious question."  Consequently, according to Comment 11, "it may be difficult or impossible for [Crowell] to give [Humana] detached advice."

### B. Crowell's Financial Arrangement With Humana May Be Another Basis For A Conflict Under Rule 1.7(b)(4)

The engagement letter that Walgreens understands this Court has now received *in camera* may further reveal that Crowell's ability to provide Humana with "detached advice" is compromised.  Based on that letter, Your Honor may now assess if the arrangement (e.g., the nature of the fee structure) provides insight into the economic incentives that may make it difficult

for Crowell to provide objective advice to Humana.[3]

### C.    Crowell's Ability To Advise Humana On Settlement And Potential Legal Malpractice Is Likely Compromised

To the extent Crowell has any involvement any settlement discussions,[4] Crowell may also be unable to provide Humana with "detached advice" as to any potential settlement with Walgreens.  Because Walgreens asks this Court, among other things, to vacate the arbitrator's award based on Crowell switching sides and then soliciting Humana to bring a claim against Walgreens, which means the award was procured by "undue means," Crowell likely cannot provide Humana with detached advice regarding Humana's likelihood of defeating that argument and, thus, whether and how Humana should settle its claim against Walgreens.  Would Crowell, for example, tell Humana that there is a real risk that the award could be vacated based on Crowell's own misconduct and that Humana should settle the claim?

Separately, would Crowell explain to Humana any legal malpractice claim that Humana may be able to assert against Crowell if the arbitral award is vacated based on Crowell's conduct? *See, e.g.*, *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro*, LLP, 10-cv-0454 (JDB), 2012 U.S. Dist. LEXIS 169657, at *62-63 (D.D.C. Feb. 2, 2012) ("Under some circumstances, a lawyer may, indeed, have an obligation to advise his client about a possible malpractice claim.  Most obviously, when a lawyer continues to represent a client who may have a viable malpractice case against the lawyer, the client may unknowingly be relying on legal advice from a conflicted source.")

---

[3] Certain Reed Smith lawyers in the D.C. Superior Court Action have access to the details of this arrangement, but Reed Smith lawyers participating in the Arbitration and in the proceedings before this Court are restricted from reviewing the engagement letter as a result of the current protective order in place in that case.

[4] Crowell did not disclose to Walgreens until less than half an hour before the deadline for this brief that Eimer Stahl LLP would also be serving as counsel to Humana for settlement purposes, despite Walgreens having shared a draft status report with Humana that included a line for it to insert its counsel for settlement more than 24 hours before the deadline for this brief.

Even if Crowell did discuss these matters with Humana, it is unlikely it could provide "detached advice" in this classic Rule 1.7(b)(4) situation where Crowell's "professional judgment . . . will be or reasonably may be adversely affected by [its] responsibilities to or interest in . . . [its] own financial, business . . . interests."

## DISCUSSION OF RULE 1.7(c)

If the Court finds that Rule 1.7(b)(4) applies, then Humana could only waive that conflict through "informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." But even with informed consent, Crowell could only continue in the representation if it reasonably believes it "will be able to provide competent and diligent representation to" Humana. D.C. Rule of Prof'l Conduct 1.7(c). As described below, there is reason to doubt whether Humana has, in fact, received full disclosure that would support informed consent and, even if so, whether Crowell can reasonably believe it will be able to provide competent and diligent representation to Humana.

### A.      The Meaning Of Informed Consent

D.C. Rule of Professional Conduct 1.0(e) defines "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *See also United States v. Flynn*, 411 F. Supp. 3d 15, 55 (D.D.C. 2019) (citing D.C. Rules Prof'l Conduct R. 1.0 and 1.7(c)(1) in holding that a lawyer may represent a client if the "potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation"). Comment 2 to Rule 1.0 provides that "informed consent" requires "communication that includes a disclosure of the facts and circumstances giving rise to

the situation, any explanation reasonably necessary to inform the client . . . of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's . . . options and alternatives."  Moreover, "[d]isclosure and informed consent are not mere formalities."  Cmt. 27 to R. 1.7.  To the contrary, "[a]dequate disclosure requires such disclosure of the parties and their interests and positions as to enable each potential client to make a fully informed decision as to whether to proceed with the contemplated representation.  *Id*.; *see also U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 1:12-cv-85-HSO-RHW, 2015 U.S. Dist. LEXIS 71804, at *17-23 (S.D. Miss. 2015) (holding that an attorney breached his duty to his client under Rule 1.7 to bolster his position in a separate case with a different client, even where the client gave "consent" that the court did not view as "informed").

### B.   Given Crowell's Past Actions, Humana May Not Have Received Sufficient Information To Provide Informed Consent

Although Walgreens does not know what, if any, information Crowell provided to Humana to seek informed consent, the Court has the ability to explore these issues.  *See, e.g., Brooks v. Berryhill*, No. 1:15-cv-00436, 2017 U.S. Dist. LEXIS 222396, at *17 (D.D.C. Oct. 26, 2017) (holding that courts have the inherent power to evaluate ethical violations and conflicts that come before them) (citing *Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 131 (D.D.C. 1994)).

Walgreens does, however, have reason to question whether Humana received "informed consent" in accordance with the requirements of Rule 1.7(c)(1) in light of the fact that Crowell initially told Walgreens that WHI, not Walgreens, was Crowell's prior client.  Was the information Crowell provided to Humana any more accurate?  Although Crowell has now admitted its client relationship with Walgreens in a declaration from its general counsel, if Crowell misrepresented to Humana which entity it previously worked for or the nature of its representation of Walgreens, Humana could not have given informed consent.

The Court may also wish to explore whether Crowell "communicated adequate information and explanation [to Humana] about the material risks of" its continued representation of Humana in the Arbitration and in this Court, including whether Crowell provided objective, dispassionate settlement advice, and whether Crowell provided Humana with "adequate information and explanation about . . . reasonably available alternatives to" Humana's continuing as its counsel. D.C. Rule of Prof'l Conduct 1.0(e).  For example, Walgreens' counsel previously raised the possibility of Crowell's co-counsel, Stein Mitchell Beato & Missner LLP, handling the Arbitration. ECF No. 30-34, Bender Decl., at 7.  Although Humana rejected that possibility, *see id.* at 8; ¶ 7 (noting Humana's stated "strong desire to have Crowell proceed in the Arbitration); Ex. 4 to Opp'n to PI, Declaration of C. Schiff (<u>Schiff Decl.</u>)[5] ¶¶ 10-11, it may not have had sufficient information in reaching that conclusion, nor may it have had sufficient information to consider that possibility with regard to these proceedings.  Moreover, unless Crowell provided sufficient detail for Humana to adequately assess whether Crowell's prior and current representations were substantially related, then all Humana would have had to rely upon was the mere unsupported assurance from Crowell that Crowell's relationship with Walgreens and Crowell's relationship with Humana were not substantially related, which is too slender a reed for informed consent.   Walgreens does not know if Crowell sufficiently advised Humana with regard to potential mitigation of risks, particularly in light of Walgreens' statement to the arbitrator (in proceedings in which no representative from Humana attended) that Walgreens was retaining its right to argue that any award would need to be vacated due to Crowell's breach of its fiduciary duty, and the arbitrator noted that the proceedings were "potentially under some cloud."  ECF No. 30-34, Bender Decl.

---

[5] Although the Court has received this document through Walgreens' *in camera* submission, Exhibit 4 to the Opp'n to PI was also filed on the public docket with no redactions.

¶ 5-6, 9.  For these reasons, an inquiry into Crowell's disclosures to Humana, including through its engagement letter that this Court has now received, along with other communications Humana and Crowell had after Walgreens raised Crowell's conflict, would permit the Court to assess Crowell's compliance with Rule 1.7(c)(1).

### C.     It Is Not Objectively Reasonable For Crowell To Believe That It Can Provide Humana With "Competent And Diligent Representation"

Even if the Court finds that Humana did give "informed consent," that would not end the inquiry.  As set forth above, Rule 1.7(c)(2) provides that, to continue in its representation, the lawyer must "reasonably believe[] that the lawyer will be able to provide competent and diligent representation to each affected client."  This appears to be an objective inquiry.  In fact, in *So v. Suchanek*, the D.C. Circuit found that, because the lawyer could not have "'reasonably believe[d]' that he was capable of 'provid[ing] competent and diligent representation to each affected client,' he breached his fiduciary duty to" his client.  670 F.3d 1304, 1308 (D.C. Cir. 2012) (citing, in part, Rule 1.7(c)(2)).  Moreover, Comment 30 to Rule 1.7 states that, "[g]enerally, it is doubtful that a lawyer could hold such a belief . . . where the lawyer's individual interests make it likely that the lawyer will be adversely situated to the client with respect to the subject-matter of the legal representation."  Crowell's individual interests may situate it adversely to Humana, depending on Crowell's economic arrangement with Humana.  Moreover, given Walgreens' position that Crowell improperly solicited Humana to sue Crowell's former client, thereby causing the award to be obtained through "undue means," it seems unlikely that Crowell could provide Humana with "competent and diligent representation" as to these matters, including with regard to settlement.

We hope that the Court finds this additional information helpful in advance of our hearing on Thursday, June 1, 2023.

Dated: May 31, 2023                    Respectfully submitted,

                                       WALGREEN CO.

                                       By */s/ Selina Coleman*
                                       Selina P. Coleman (D.C. Bar No. 991740)
                                       Frederick Robinson (D.C. Bar No. 367223)
                                       David A. Bender (D.C. Bar No. 1030503)
                                       T: 202-414-9200
                                       REED SMITH LLP
                                       1301 K Street N.W.
                                       Suite 1000 – East Tower
                                       Washington, D.C. 20005

                                       Michael Leib (*pro hac vice* pending)
                                       T: 212-521-5400
                                       REED SMITH LLP
                                       599 Lexington Avenue
                                       22nd Floor
                                       New York, NY 10022

                                       *Counsel to Walgreens*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 31st day of May, 2023, a true and correct copy of this brief was

filed via the Court's CM/ECF system, and thereby served on all Humana's counsel of record.


/s/ *Selina Coleman*
Selina Coleman