**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WALGREEN CO.<br><br>               Petitioner,<br><br>       v.<br><br>HUMANA HEALTH PLAN, INC.<br>HUMANA INSURANCE COMPANY, and<br>HUMANA PHARMACY SOLUTIONS,<br>INC.,<br><br>            Respondents. | Case No. 1:22-cv-307-ACR |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROWELL &
MORING LLP'S MOTION TO DISMISS AND VACATE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.    Arbitration and D.C. Superior Court Proceedings ....................................................2

    B.    D.D.C. Proceedings and D.C. Court of Appeals Decision ......................................5

ARGUMENT ..........................................................................................................................6

    A.    The Court Lacks Authority to Adjudicate the Merits of Walgreens' Rule
             1.9 Allegations. ........................................................................................................6

             1.    The delegation of issues to the exclusive jurisdiction of an
                      arbitrator deprives courts of authority to adjudicate the delegated
                      issues and any issues dependent upon the resolution of delegated
                      issues. ....................................................................................................7

             2.    This Court lacks jurisdiction to independently adjudicate the Rule
                      1.9 issue because the D.C.C.A. Opinion held that the parties
                      delegated the arbitrability of the Rule 1.9 issue to the arbitrator and
                      Walgreens never obtained the necessary arbitrability ruling from
                      the arbitrator. ......................................................................................11

    B.    If the Court concludes that Walgreens' petition to vacate requires
             adjudication of Walgreen's claims that Crowell breached fiduciary or
             contractual duties to Walgreens, the Court must dismiss for lack of subject
             matter jurisdiction. ................................................................................................16

    CONCLUSION.....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*A.G. Edwards & Sons, Inc. v. McCollough*,
   967 F.2d 1401 (9th Cir. 1992) .......................................................................14, 15

*Acton Co. of Massachusetts v. Bachman Foods, Inc.*,
   668 F.2d 76 (1st Cir. 1982)...................................................................................21

*Am. Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ..............................................................................21

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*,
   961 F. Supp. 2d 245 (D.D.C. 2013) ......................................................................14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)................................................................................................8

*Badgerow v. Walters*,
   142 S. Ct. 1310 (2022)..........................................................................................17

*BCBSM Inc. et al. v. Walgreen Co.*,
   No. 20-cv-1853 (N.D. Ill.) ......................................................................................4

*Boyd v. Kilpatrick Townsend & Stockton, LLP*,
   79 F. Supp. 3d 153 (D.D.C. 2015).........................................................................17

*Burka v. Aetna Life Ins. Co.*,
   87 F.3d 478 (D.C. Cir. 1996).................................................................................18

*Capitol Med. Ctr., LLC v. Amerigroup Maryland, Inc.*,
   677 F. Supp. 2d 188 (D.D.C. 2010).......................................................................22

*\*Commc'ns Workers of Am. v. AT&T Inc.*,
   6 F.4th 1344 (D.C. Cir. 2021)........................................................................8, 9, 12

*De Csepel v. Republic of Hungary*,
   27 F.4th 736 (D.C. Cir. 2022)..........................................................................19, 23

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).......................................................................................7, 8, 9, 13

*Freeport-McMoRan, Inc. v. KN Energy, Inc.*,
    498 U.S. 426 (1991) ................................................................................................18

*Hall St. Assocs., LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008) ................................................................................. 7, passim

\*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .............................................................................. 6, passim

*Jam v. Int'l Fin. Corp.*,
    442 F. Supp. 3d 162 (D.D.C. 2020) ........................................................................9

*LLC SPC Stileks v. Republic of Moldova*,
    985 F.3d 871 (D.C. Cir. 2021) ..............................................................................10

*Mattel, Inc. v. Bryant*,
    446 F.3d 1011 (9th Cir. 2006) ...............................................................................18

*Moses H. Cones Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..................................................................................................23

*In re Olympic Mills Corp.*,
    477 F.3d 1 (1st Cir. 2007) ...............................................................................19, 25

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ..................................................................................................9

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ..............................................................................................12

*Salt Lake Trib. Pub'g Co., LLC v. AT & T Corp.*,
    320 F.3d 1081 (10th Cir. 2003) ............................................................................18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................................6

*Strawbridge v. Curtiss*,
    7 U.S. (3 Cranch) 267 (1806) ...............................................................................17

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987) ................................................................................................15

*United States v. Sineneng-Smith*,
    140 S. Ct. 1575 (2020) ..........................................................................................17

*W. Flagler Assocs., Ltd. v. Haaland*,
　71 F.4th 1059 (D.C. Cir. 2023).................................................................................19

*Wilko v. Swan*,
　346 U.S. 427 (1953)......................................................................................................7

**STATE CASES**

*Humana Health Plan, Inc. et al. v. Walgreen Co*,
　No. 2021-CA-001581-B (D.C. Super. Ct.)..................................................................3

*Jordan v. Washington Metro. Area Transit Auth.*,
　548 A.2d 792 (D.C. 1988) .........................................................................................12

*Thornton v. Norwest Bank of Minnesota*,
　860 A.2d 838 (D.C. 2004) .........................................................................................12

*Walgreen Co. v. Crowell & Moring LLP*,
　No. 2021-000861-B (D.C. Super. Ct.).........................................................................2

\**Walgreen Co v. Humana Health Plan, Inc. et al.*,
　No. 21-cv-0370 (D.C.C.A.) .........................................................................................4

**CASES - OTHER**

*Humana Health Plan, Inc. et al. v. Walgreen Co., et al.*,
　AAA Case No. 1-19-0002-5131 (Aug. 12, 2019)........................................................2

**FEDERAL STATUTES**

9 U.S.C. § 2...........................................................................................................7, 8, 10

9 U.S.C. § 10.......................................................................................................6, passim

9 U.S.C. § 11....................................................................................................................7

28 U.S.C. § 1332.......................................................................................................2, 17

**FEDERAL RULES**

Fed. R. Civ. P. 19 ....................................................................................................1, passim

**STATE RULES**

D.C. R. Prof. Cond. 1.9.............................................................................................1, passim

## <u>INTRODUCTION</u>

The Court should dismiss Walgreens' Second Amended Petition for lack of jurisdiction to the extent it relies on allegations that Crowell violated Rule 1.9 of the D.C. Rules of Professional Conduct, and that Crowell breached its fiduciary duties to, and contract with, Walgreens, in connection to the Humana arbitration. That is so for two independent reasons.

First, this Court lacks authority to adjudicate Walgreens' contentions that Crowell violated Rule 1.9 because that issue was for the arbitrator to decide in the first instance, and Walgreens never obtained the necessary arbitral ruling on the issue. On August 1, 2023, the D.C. Court of Appeals conclusively confirmed that Walgreens was required to obtain from the arbitrator a decision as to whether its allegation that Crowell's representation of Humana violated Rule 1.9 must be subject to arbitration. That ruling definitively establishes that Walgreens first had to obtain a ruling from an arbitrator as to whether the Rule 1.9 issue was arbitrable or could instead be brought in court. Walgreens chose not to do that, and that decision deprives this Court of the authority to decide the Rule 1.9 issue under binding Supreme Court and D.C. Circuit authority.

Second, this Court lacks subject matter jurisdiction to adjudicate Walgreens' allegation that the arbitral award should be vacated based on Crowell's alleged breach of fiduciary duty and alleged breach of contract. This Court's September 2, 2023, order states that the Court will adjudicate those allegations as part of this proceeding. Walgreens has recently clarified that its petition seeking vacatur of the arbitration award encompasses those allegations (and not merely the allegation that Crowell violated Rule 1.9).[1] Crowell is, however, an indispensable party under Federal Rule of Civil Procedure 19 with respect to the breach of fiduciary duty and breach

---

[1] Ex. A (Email Correspondence dated September 20, 2023).

of contract allegations.  Because this Court's subject matter jurisdiction rests exclusively on diversity, 28 U.S.C. § 1332, and Crowell's status as an indispensable party would destroy complete diversity, this Court must dismiss this case for lack of jurisdiction.

Crowell therefore moves to dismiss the second amended petition to the extent it relies on allegations that Crowell violated Rule 1.9.  Crowell also moves to dismiss the second amended petition for lack of subject matter jurisdiction because Crowell is indispensable with respect to Walgreens' contentions that that Crowell breached its fiduciary or contractual duties to Walgreens.  For these reasons, Crowell further moves to vacate the November hearing..

## **BACKGROUND**

### A.  **Arbitration and D.C. Superior Court Proceedings**

Humana, then represented by Crowell, initiated arbitration against Walgreens in 2019 to stop Walgreens' massive overcharge scheme, which offered deep discounts to keep up with competitors while simultaneously over-billing Humana and other insurers with inflated "usual and customary" prices for prescription drugs ("U&C").  *Humana Health Plan, Inc. et al. v. Walgreen Co., et al.*, AAA Case No. 1-19-0002-5131 (Aug. 12, 2019).  Nearly two years into that dispute, in March 2021, Walgreens informed the arbitrator that it believed that Crowell should withdraw from representing Humana in light of Crowell's past work for Walgreens.  *See* Dkt. 30-34 (Walgreens' arbitration notes).  In response, Crowell stated that the appropriate procedure would be a motion for disqualification before the arbitrator.  *Id.* at 9.

Walgreens did not, however, move to disqualify Crowell in the arbitration.  Instead, Walgreens sued Crowell in D.C. Superior Court, alleging that Crowell's representation of Humana violated Rule 1.9 and that Crowell breached its fiduciary duty to Walgreens as a former client.  First Amended Complaint ¶¶ 87–99, *Walgreen Co. v. Crowell & Moring LLP*, No. 2021-000861-B (D.C. Super. Ct. Apr. 6, 2021) (the "Superior Court Action").  Walgreens moved for a

2

preliminary injunction that would bar Crowell from representing Humana in the arbitration.  *Id.*, Plaintiff's Opposed Motion for Preliminary Injunction (Apr. 9, 2021).

Humana responded by filing a separate D.C. Superior Court action seeking to compel Walgreens to arbitrate its allegation that Crowell's representation of Humana violated Rule 1.9 and precluded Crowell from continuing that representation.  *Humana Health Plan, Inc. et al. v. Walgreen Co*, Case No. 2021-CA-001581-B (D.C. Super. Ct. filed May 12, 2021) (the "Humana Superior Court Action").  The Superior Court granted Humana's motion to compel arbitration.  It held that the agreement between Walgreens and Humana delegated to the arbitrator the question of the arbitrability of Walgreens' allegation that Crowell's representation of Humana violated Rule 1.9.  Order Granting Motion to Compel (May 27, 2021); *see also* Dkt. 99-1 (same).  The Court therefore compelled Walgreens "to arbitrate its request that Crowell & Moring be enjoined from representing Humana in the ongoing arbitration between Humana and Walgreens."  *Id.* at 6.

Faced with this court order, Walgreens made a strategic choice.  It did not submit the arbitrability question to the arbitrator.  And it did not seek a stay or continuance of the arbitration, even though the liability phase of the arbitration had not yet begun.  Walgreens instead asked the D.C. Court of Appeals (D.C.C.A.) to summarily reverse the Superior Court's ruling, and at the same time moved in the Humana Superior Court Action to stay the order compelling arbitration.  Walgreens' Opposed Motion for Stay Pending Appeal, Humana Superior Court Action (June 3, 2021).  Humana opposed the stay motion and argued, presciently, that Walgreens wanted the court to

> allow Walgreens to sit on any disqualification motion until *after* the trial is complete, without having to face the consequences of waiver.  This would unfairly place Walgreens in a win-win situation: should Walgreens prevail at trial, it would not need to raise any disqualification issue; should Humana prevail, Walgreens would get a second bite at the apple.

Opposition to Motion for Stay Pending Appeal at 4 (June 10, 2021).

On June 16, 2021, the D.C.C.A. denied Walgreens' request for summary reversal. *Walgreen Co v. Humana Health Plan, Inc. et al.*, No. 21-cv-0370 (D.C.C.A. June 16, 2021) (D.C.C.A. Appeal).  The next day, Walgreens withdrew its motion in the Superior Court to stay that court's prior order compelling arbitration.  Praecipe to Withdraw Motion (June 17, 2021). Purporting to explain this withdrawal, Walgreens asserted that it did not need to affirmatively raise the Rule 1.9 issue in arbitration because Humana "admitted" that the Superior Court order did not require Walgreens to seek Crowell's disqualification and instead required only that, if Walgreens chose to assert its claim that Crowell should not represent Humana, then Walgreens "must do so before the arbitrator and not this Court." *Id.* at 1–2.  In response, Humana pointed out again that Walgreens was making a deliberate tactical choice to "avoid raising [its Rule 1.9] allegations in the proper forum—the tribunal that is hearing the underlying matter and is best situated to resolve them (and the only tribunal authorized to decide whether it is the proper forum for resolving them)."  Response to Praecipe Withdrawing Motion at 4 (June 23, 2021).[2]

When the arbitration liability trial began on June 21, 2021, the Superior Court order— which had not been stayed—required Walgreens to arbitrate the arbitrability of its allegation that Crowell should be disqualified under Rule 1.9.  Walgreens could have moved to stay the arbitration to resolve the pending D.C.C.A. appeal of that Superior Court order, properly disputed arbitrability depending on the result of the D.C.C.A. appeal (that is, before an arbitrator

---

[2] Walgreens demonstrated a similar preference to avoid having *any* decision maker address whether plaintiffs could keep Crowell as counsel in a parallel case in the United States District Court for the Northern District of Illinois.  There, the plaintiff insurers moved the court to "qualify" Crowell as counsel, asking the court to review the evidence and to determine that Crowell could be adverse to Walgreens.  Rather than oppose or seek to disqualify Crowell, Walgreens moved to strike the motion, noting that it had not, and may never, move to disqualify Crowell.  *BCBSM Inc. et al. v. Walgreen Co.*, No. 20-cv-1853, Dkt. No. 163 (N.D. Ill. Aug. 3, 2021).

or a court), and then sought to disqualify Crowell from the arbitration before proceeding to the merits.  Walgreens, however, did not pursue that path.  Walgreens instead chose to allow the arbitration to proceed without seeking any ruling on the arbitrability of its Rule 1.9 allegation and without moving for Crowell's disqualification.

The arbitrator issued an interim liability award in November 2021.  The arbitrator later issued a final award in March 2023.  Since Walgreens had not presented the issue to the arbitrator, neither the interim award nor the final award (nor any other decision) addressed the arbitrability or merits of any Rule 1.9 issue related to Crowell's representation of Humana.

**B.    D.D.C. Proceedings and D.C. Court of Appeals Decision**

After the interim award and before the final award, Walgreens filed a petition to vacate the arbitration award under the FAA.  Dkt. 1.  That petition did not allege that the arbitral award was obtained by undue means, and it asked the court to defer review until the arbitrator issued a final award.  *Id.* ¶¶ 82-84.

Walgreens filed an amended petition in May 2023, arguing for the first time that Crowell's "violation of its ethical obligations" amounted to "undue means" under the FAA that compelled vacatur of Humana's arbitration award.  Dkt. 30 ¶¶ 108–113.  Walgreens admitted that Crowell's conduct "was discovered and raised during the course of the arbitration" but blamed Humana for not asking the arbitrator to stay the arbitration.  *Id.* ¶ 111.

Walgreens filed a second amended petition June 2023 and again alleged that Crowell's "violation of its ethical obligations to Walgreens" amounted to "undue means" that required vacatur under the FAA.  Dkt. 65 ¶ 27.

On August 1, 2023, the D.C.C.A. affirmed the Superior Court's order compelling arbitration.  The D.C.C.A. concluded that the Walgreens-Humana arbitration agreement delegated the arbitrability of the Rule 1.9 issue to the arbitrator and that a court has "no power"

to decide that issue unless and until the arbitrator determined that it was not arbitrable.  D.C.C.A. Op. at 5 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)); *see also* Dkt. 99-2 (same).  The D.C.C.A. expressly held that Walgreens "must submit that threshold dispute to arbitration" and that Walgreens's arguments "challenging the scope and applicability of the Provider Agreement with respect to its claims against Crowell must accordingly be brought before the arbitrator."  *Id.* at 5–6.

After that ruling, Crowell filed a pre-motion notice to advise the Court of its intent to file a motion to dismiss and to vacate the November 8–9 hearing date.  Dkt. 99.  This Court then issued a Minute Order setting forth the issues to be adjudicated at the November hearing. Minute Order (Sept. 2, 2023).  That order identifies Walgreens' allegations of breach of fiduciary duty and contract as issues to be considered at the hearing.  *Id.*  Walgreens has confirmed that its petition to vacate the arbitral award rests in part on those allegations.  Ex. A (Email Correspondence dated September 20, 2023).  At a September 12 status conference, the Court permitted Crowell to proceed with this motion, including those issues raised in a now-stricken status conference statement.  Ex. B, Tr. at 19:5–14 (Sept. 12, 2023).

## <u>ARGUMENT</u>

This Court lacks authority to adjudicate whether Crowell violated Rule 1.9 and whether Crowell violated fiduciary or contractual duties.

### A.   <u>The Court Lacks Authority to Adjudicate the Merits of Walgreens' Rule 1.9 Allegations.</u>

As the party seeking to establish that Crowell's conduct violated Rule 1.9, Walgreens has the burden to establish that this Court has the statutory authority under the FAA to decide that question.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Walgreens asserts that Section 10(a) of the FAA, 9 U.S.C. § 10(a), provides that authority on the

theory that the arbitration award was obtained by "undue means" as a result of the alleged Rule 1.9 violation.  But Walgreens skipped an essential step in establishing this Court's authority, and as a result this Court lacks power to consider the alleged violation of Rule 1.9.

> **1.  The delegation of issues to the exclusive jurisdiction of an arbitrator deprives courts of authority to adjudicate the delegated issues and any issues dependent upon the resolution of delegated issues.**

a.  The FAA governs—and strictly constrains—courts' authority to review arbitration awards.  The Supreme Court has repeatedly emphasized that the FAA limits the courts' *power* to adjudicate disputes between the parties that would otherwise fall within the courts' subject matter jurisdiction.  *Hall St. Assocs., LLC v. Mattel, Inc*., 552 U.S. 576, 584 (2008) ("*Power* to vacate an award is limited" under "FAA § 10." (emphasis added) (alterations and citation omitted)); *Wilko v. Swan*, 346 U.S. 427, 436 (1953) (same), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc*., 490 U.S. 477 (1989); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Specifically, the FAA directs courts to enforce arbitration agreements that confer on the arbitrator authority to decide disputes that otherwise would be adjudicated by the courts, 9 U.S.C. § 2, and it also limits courts' authority to review arbitral awards to an enumerated, exclusive list of "egregious departures from the parties' agreed-upon arbitration."  *Hall St. Assocs*., 552 U.S. at 586; *see* 9 U.S.C. §§ 10, 11.  The Supreme Court characterizes these as limitations on courts' statutory authority to adjudicate disputes between the parties and, as a consequence, held that courts may not disregard the FAA's limitations on review even when the court believes doing so would be more efficient or equitable, and even when the parties agree to submit the issue to the court.  *Dean Witter*, 470 U.S. at 218 (court may not bypass FAA's limitations even when it concludes that doing so would be efficient or otherwise advisable); *Hall St. Assocs*., 552 U.S. at 585 (parties may not authorize courts to review arbitral awards for "legal error").

In particular, the FAA establishes that courts lack authority to adjudicate issues that the parties have delegated to the arbitrator to decide.  Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  That language, the Supreme Court and the D.C. Circuit have held, establishes that "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein*, 139 S. Ct. at 529.  Thus, when the "parties have agreed to submit a particular grievance to arbitration," the courts "have no business weighing the merits of the grievance" in any circumstance. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986) (citation omitted).

Of particular relevance here, this limitation on courts' authority "applies with equal force to the threshold issue of arbitrability." *Henry Schein*, 139 S. Ct. at 530.  Where the parties' contract delegates to an arbitrator the question whether a particular dispute is arbitrable, a court "may not override the contract" and accordingly has "no power to decide the arbitrability issue." *Id*. at 529.

Because the parties' commitment of an issue—including a threshold question of arbitrability—to the arbitrator deprives the courts of power to decide the issue, the FAA's directive that courts must refrain from deciding such issues "leaves no place for the exercise of discretion by a district court." *Dean Witter*, 470 U.S. at 218.  When an issue is for the arbitrator, the court must "stay its hand," *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1348 (D.C. Cir. 2021), regardless of whether the court believes that considerations of equity or efficiency would justify the court's deciding the issue for itself, *Henry Schein*, 139 S. Ct. at 529

(court may not decide issue committed to arbitrator even when arguments on one side are wholly groundless); *Dean Witter*, 470 U.S. at 218.

Recognizing the unbending nature of that directive, the D.C. Circuit describes the prohibition on deciding issues committed to the arbitrator as jurisdictional.  When the parties have agreed that "the question whether a particular dispute is arbitrable is strictly for the arbitrator, not a court," then, "[p]ursuant to that understanding, the district court . . . *lack[s] jurisdiction* to decide whether the parties' dispute should be submitted to arbitration." *Commc'ns Workers*, 6 F.4th at 1349 (emphasis added).  That binding determination from the D.C. Circuit flows from the fact that *Henry Schein* and its antecedent cases, such as *Hall Street Associates*, address courts' fundamental power to adjudicate issues.  *Hall Street Associates* in particular makes clear that parties cannot even by consent give the court more power than the FAA provides in the first place.  *Hall St. Assocs.*, 552 U.S. at 585.  This Court therefore must first address its authority before proceeding further.  *Cf., e.g., Jam v. Int'l Fin. Corp.*, 442 F. Supp. 3d 162, 170 (D.D.C. 2020), *aff'd*, 3 F.4th 405 (D.C. Cir. 2021).

b.  The question whether an issue is to be decided by the arbitrator—the "'who decides' question"—is "an 'antecedent' one—that is, one to be decided first."  6 F.4th at 1348 (quoting *Henry Schein*, 139 S. Ct. at 529, 531); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  Before reaching the merits of an issue that a party seeks to have adjudicated, therefore, the court must be satisfied that the issue is not arbitrable.  If, pursuant to the parties' contract, the question of arbitrability itself is for the arbitrator to decide, "the court 'possesses no power' to address the issue" and may proceed no further.  *Commc'ns Workers*, 6 F.4th at 1349 (quoting *Henry Schein*, 139 S. Ct. at 529).  Specifically, the court has "no authority to delve into the merits of" the parties' dispute, but instead must defer to the arbitrator's conclusion on

arbitrability. *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878–79 (D.C. Cir. 2021). And if the arbitrator has concluded that the dispute is arbitrable, the court must also defer to the arbitrator's resolution of the merits. *Id.* (once it was determined that "the arbitrability decision was delegated to the arbitrators," the court had "no power" to engage in "*de novo* review" of the arbitrability issue or any merits issues).

It therefore follows that, where the arbitrability of a merits issue is committed to the arbitrator, two things must happen for the court to have jurisdiction under *Communications Workers* to address the merits issue. First, the party must submit the question of arbitrability to the arbitrator. Second, the arbitrator must conclude that the merits issue is not arbitrable. Critically, if the arbitrator concludes that the merits issue is arbitrable, then only the arbitrator can decide it—subject to the extremely limited judicial review of provided for in the FAA. In other words, when a court lacks jurisdiction to decide the arbitrability of a particular issue, the court also lacks jurisdiction to decide the *merits* of that issue, *unless* the arbitrator already determined that the issue was outside the universe of arbitrable issues. Unless and until an arbitrator resolves the antecedent question of arbitrability, a court lacks the power to decide the merits of the underlying issue. To adjudicate the merits would necessarily decide that the issue is non-arbitrable. Such a step would exceed the court's statutory authority by deciding the very arbitrability issue that the parties delegated exclusively to the arbitrator, thereby violating the FAA's express command that arbitration agreements are "valid, irrevocable, and enforceable" according to their terms. 9 U.S.C. § 2.

2. **This Court lacks jurisdiction to independently adjudicate the Rule 1.9 issue because the D.C.C.A. Opinion held that the parties delegated the arbitrability of the Rule 1.9 issue to the arbitrator and Walgreens never obtained the necessary arbitrability ruling from the arbitrator.**

a.  Applying those principles here, the Court lacks jurisdiction under *Communications Workers* to adjudicate Walgreens' Rule 1.9 allegations.  Walgreens seeks a de novo adjudication of whether Crowell's representation of Humana violated Rule 1.9.  Walgreens therefore must establish that this Court has authority to independently adjudicate that issue under the FAA and the parties' contract.  It cannot do so, because it failed to obtain a prerequisite to this Court's authority: a ruling from the arbitrator that the Rule 1.9 issue is for the court, not the arbitrator, to decide.

As the D.C.C.A. held, the parties' arbitration agreement delegates to the arbitrator exclusive authority to determine the arbitrability of Walgreens' contention that Crowell's representation of Humana violated Rule 1.9 and therefore required that Crowell be disqualified. D.C.C.A. Op. at 5 (explaining that pursuant to the contract between the parties, courts have "no power to decide the arbitrability issue" (quoting *Henry Schein*, 139 S. Ct. at 529)).  The D.C. Superior Court's order to that effect—affirmed unanimously by the D.C.C.A.—had obvious import from the moment it was issued: before seeking any judicial adjudication of Crowell's alleged Rule 1.9 violation, Walgreens would have to submit the arbitrability of that question to the arbitrator, and obtain a ruling that the Rule 1.9 issue was for a court, *and not the arbitrator,* to decide.  Only if those prerequisites were satisfied would this Court then have "power" to adjudicate whether Crowell violated Rule 1.9.[3]  *Henry Schein*, 139 S. Ct. at 529.

---

[3] If Walgreens had submitted arbitrability to the arbitrator, and the arbitrator had determined that the Rule 1.9 issue was arbitrable, then this Court would have authority to review both the arbitrator's determination of arbitrability and its ruling on the Rule 1.9 issue only under the extremely limited grounds set forth in the FAA.  That is, the Court would not have authority to evaluate whether, as a factual matter, Crowell engaged in the conduct alleged by Walgreens, or

Walgreens made a deliberate tactical choice not to take those necessary, antecedent steps. Even after the Superior Court unequivocally held that the question of arbitrability was for the arbitrator, Walgreens neither submitted the arbitrability question to the arbitrator nor sought to stay the arbitration pending appeal of the Superior Court's order. *See Thornton v. Norwest Bank of Minnesota*, 860 A.2d 838, 841 (D.C. 2004) ("the pendency of an appeal does not alter the effect of the judgment or order from which the appeal is taken," characterizing *Jordan v. Washington Metro. Area Transit Auth.*, 548 A.2d 792, 795 n. 4 (D.C.1988)). Having chosen not to submit the arbitrability question to the arbitrator, Walgreens did not obtain a ruling from the arbitrator that the Rule 1.9 issue is for the courts to decide. But that arbitral ruling—which, according to the parties' contract, falls within the arbitrator's exclusive authority—is a prerequisite to this Court's authority to independently adjudicate the Rule 1.9 issue. *Commc'ns Workers*, 6 F.4th at 1349.

This Court therefore has "no power" to decide the Rule 1.9 issue at this juncture. The Court may not adjudicate the Rule 1.9 issue on the basis of an assumption that the arbitrator would have concluded that the Rule 1.9 issue was for the courts to decide—even if this Court believes that the issue is non-arbitrable. That is the precise issue that the Supreme Court decided in *Henry Schein*, 139 S. Ct. at 529 (when the question of arbitrability has been committed to an arbitrator, the court may not decide that the issue is nonarbitrable even if it believes the arguments for arbitrability are "wholly groundless"); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (explaining that a federal court "may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits"). Nor does the Court have "discretion" to

---

whether that conduct violated Rule 1.9 as a legal matter. Walgreens made a deliberate decision to evade that possible outcome by refusing to submit arbitrability to the arbitrator in the first place.

excuse Walgreens' failure to obtain an arbitral ruling that the Rule 1.9 issue was for the courts to decide. *Dean Witter*, 470 U.S. at 218. The FAA requires that the parties' contract be enforced "as written," and "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 139 S. Ct. at 529. Walgreens' failure to obtain the arbitrator's ruling on the arbitrability of the Rule 1.9 issue precludes any adjudication of the Rule 1.9 issue in support of the petition to vacate.

Attempting to avoid this conclusion, Walgreens contends that the D.C.C.A. held only that the arbitrability of Walgreens' contention that Crowell should be enjoined from representing Humana—not its underlying allegation that Crowell violated Rule 1.9—was for the arbitrator to decide. Dkt. 108 at 3. That is wrong. The legal and factual basis on which Walgreens sought to block Crowell's representation of Humana in the arbitration was Walgreen's allegation that Crowell violated its ethical duties to Walgreens as a former client—that is, *that Crowell violated Rule 1.9*. Brief of Appellant, D.C.C.A. Appeal Dkt. 14 at 18–24 (arguing on appeal that its basis for disqualification relied on a violation of the D.C. Rules of Professional Conduct and that, absent informed consent, an arbitrator cannot adjudicate such a disqualification motion). To adjudicate Walgreens' request for disqualification, the decisionmaker necessarily would have had to determine whether Crowell violated Rule 1.9. In ruling that the arbitrability of Walgreens' claim that Crowell could not represent Humana was for the arbitrator to decide, therefore, the D.C.C.A. necessarily held that the arbitrability of whether Crowell violated Rule 1.9 had to be decided by the arbitrator. Walgreens' present contention that the arbitral award should be vacated as procured by undue means rests on the exact same factual and legal predicate as its challenge to Crowell's representation of Humana in that arbitration. Dkt. 65 ¶¶ 7, 27–28. Thus, the only difference between the two is the *remedy* sought. But that remedial

13

distinction is simply a product of the different procedural posture of the two claims.  When a party raises a conflict-of-interest issue *during* the relevant proceeding, the remedy sought is disqualification; when the party raises the same conflict-of-issue *after* the relevant proceeding has concluded, the remedy sought is vacatur of the result of the proceeding.  That does not change the fact that in both procedural postures, the underlying legal right and factual allegations that must be adjudicated are exactly the same.

      b.    Walgreens may not obtain a de novo ruling on the Rule 1.9 issue through the expedient of contending that Crowell's alleged Rule 1.9 violation constitutes "undue means." That would constitute an impermissible end-run around the FAA's clear jurisdictional bar.

      As the Supreme Court has explained, the FAA's text demonstrates that the statutory grounds for vacating or correcting an arbitral award do not authorize substantive judicial review of—much less a de novo adjudication of—issues that were or should have been presented to the arbitrator.  The exclusive grounds for vacating an arbitral award—which, in addition to undue means, include fraud, corruption, evident partiality, and misbehavior—"address egregious departures from the parties' agreed-upon arbitration." *Hall St. Assocs*., 552 U.S. at 586; 9 U.S.C. § 10.  Those provisions thus are intended to provide power to review "specific instances of outrageous conduct" that are *collateral* to the arbitration proceeding itself.  *Id*.  They do not permit a party seeking vacatur to raise issues that the arbitrator would naturally rule on in the course of a proceeding.  *Id*.; *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992) ("[W]here the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple."); *ARMA, S.R.O. v. BAE Sys. Overseas, Inc*., 961 F. Supp. 2d 245, 258 (D.D.C. 2013) (same).  Indeed, in *Hall Street Associates*, the Supreme Court expressly held that the FAA

prohibits the parties from agreeing that a court may review an arbitral award for "any legal error," because permitting that sort of judicial review would be inconsistent with Section 10's limitation of review to issues that are "departures" from the arbitration rather than issues that could have been raised within the arbitration.  552 U.S. at 586.  It necessarily follows that Section 10's reference to "undue means" cannot be construed to permit parties to obtain an independent adjudication of issues that could and should have been presented to the arbitrator.

The FAA's policy objectives compel the same conclusion.  The Supreme Court has repeatedly emphasized that courts "are not authorized to reconsider the merits of an award" even when parties contend that the award rests on factual or legal errors—much less decide in the first instance issues committed to the arbitrator—because the whole point of the FAA is to ensure that the arbitration does not become "merely a prelude" to "full-bore legal and evidentiary appeals" in court.  *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 36 (1987); *Hall St. Assocs*., 552 U.S. at 588.  In other words, the "narrow scope" of judicial review of the arbitral award forecloses parties from using the "undue means" vacatur ground as a vehicle for obtaining a "second bite at the apple" on any issue that the parties contractually agreed to submit to the arbitrator.  *A.G. Edwards*, 967 F.2d at 1404.

To hold that Crowell's alleged violation of Rule 1.9 can be adjudicated in the course of resolving Walgreens' "undue means" argument, therefore, this Court would have to rule that the question of whether Crowell violated Rule 1.9 is collateral to the arbitration—that is, a "departure" from the arbitration rather than a dispute that  should have been resolved within the arbitration.  *Hall St. Assocs*., 552 U.S. at 586.  But that very question—whether the Rule 1.9 issue is collateral to the arbitration or should be decided within it—is precisely what the D.C.C.A. has held is exclusively for the arbitrator to decide.  This Court has no jurisdiction to

consider that question, and it therefore has no authority to adjudicate Walgreens' "undue means" argument based on Rule 1.9.  Put another way, Walgreens' attempt to use the "undue means" standard in this way is, at bottom, an impermissible end-run around the FAA's limits on the courts' power.

*          *          *

This Court therefore lacks jurisdiction to proceed to the merits of the Rule 1.9 issue, and must dismiss Walgreens' petition to vacate to the extent that it relies on Crowell's alleged Rule 1.9 violations.  No authority exists to permit Walgreens to do exactly what Humana predicted it would do years ago: manipulate the judicial process to get a second bite at the apple against Humana's meritorious U&C claims based on Walgreens' allegations against Crowell.

**B.**     **If the Court concludes that Walgreens' petition to vacate requires adjudication of Walgreen's claims that Crowell breached fiduciary or contractual duties to Walgreens, the Court must dismiss for lack of subject matter jurisdiction.**

In its September 2, 2023, minute order, the Court stated that it intends to address whether "Crowell breached its fiduciary duties to and/or its contract with Walgreens."  Minute Order (Sept. 2, 2023).  Walgreens subsequently confirmed that its petition to vacate the arbitral award encompasses claims that Crowell breached its fiduciary duties to, and its contract with, Walgreens.  Ex. A.  Given all that, this Court must decide whether Crowell is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure that should have been joined as a party to this matter from the filing of Walgreens' second amended petition.  The answer to that question is yes.  Adjudicating Walgreens' fiduciary duty and contract claims would resolve *all* elements of the corresponding claims that Walgreens has asserted against Crowell in D.C. Superior Court, thereby causing Crowell such severe prejudice that its presence as a party in this action is indispensable.  And because Crowell, as a citizen of Illinois, is not diverse from

16

Walgreens, its status as an indispensable party destroys complete diversity, divesting the Court of subject matter jurisdiction.   This Court must therefore dismiss the petition.[4]

1.  This Court's subject matter jurisdiction rests on diversity of citizenship.  The FAA does not itself create subject-matter jurisdiction, and therefore the district court must have an "independent jurisdictional basis."  *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022) (quoting *Hall St. Assocs.*, 552 U.S. at 582).  The sole basis for jurisdiction here is diversity of citizenship. 28 U.S.C. § 1332.  Section 1332 requires *complete* diversity — that is, all parties must be diverse from all other parties.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806).  As between Walgreens and Humana, the requirement of complete diversity satisfied: Walgreens is a citizen of Illinois and the Humana entities are citizens of Wisconsin and Kentucky.  Dkt. 65 ¶¶ 16–20.

After Crowell withdrew from its representation of Humana in this action, the Court permitted Crowell to participate on its own behalf in connection to the Rule 1.9 issue.  Ex. C (Email Correspondence dated July 19, 2023).  Crowell and Walgreens, however, do not possess diverse citizenship.  Crowell is a partnership with at least one partner domiciled in Illinois, which provides Crowell with Illinois citizenship for purposes of diversity jurisdiction.  *Boyd v. Kilpatrick Townsend & Stockton, LLP*, 79 F. Supp. 3d 153, 157 n.1 (D.D.C. 2015); *see*

---

[4] To be sure, if Walgreens does not intend to advance claims for breach of fiduciary duty and breach of contract, then subject-matter jurisdiction can be preserved by avoiding consideration of such claims.  But even if Walgreens now disclaims any intent to advance its fiduciary-duty and contract claims here, the Court's order stating that the fiduciary-duty and contract claims will be resolved in this case (irrespective of the principle of party presentation, *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)) has deprived the Court of subject matter jurisdiction.  To restore subject matter jurisdiction, this Court would need to reverse its order providing that the fiduciary-duty and contract claims will be adjudicated in this case.

Declaration of David Schnorrenberg ¶ 4.  Complete diversity therefore does not exist among Crowell, Walgreens, and Humana.

2.  Given Crowell's non-diversity, this Court's subject matter jurisdiction turns on whether Crowell has been an indispensable party within the meaning of Rule 19 of the Federal Rules of Civil Procedure since the filing of the operative petition (here, the June 2023 second amended petition).

Although diversity generally "is assessed at the time the action is filed," the addition of a party that was indispensable from the outset of the action destroys complete diversity.  *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991); *see Burka v. Aetna Life Ins. Co*., 87 F.3d 478, 482 (D.C. Cir. 1996) ("[A] Rule 25(c) addition of a non-diverse party may destroy diversity jurisdiction (and hence, in a case removed from state court, require remand) if the added party was indispensable at the time the action began"); *Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013 (9th Cir. 2006) (applying same role in the context of Rule 24 intervention; "[i]ntervention destroys diversity if the intervening party is indispensable"); *Salt Lake Trib. Pub'g Co., LLC v. AT & T Corp*., 320 F.3d 1081, 1096 (10th Cir. 2003) ("diversity jurisdiction will be destroyed if it is determined that the later-joined, non-diverse party was indispensable to the action at the time it commenced").  Where (as here) the plaintiff (or petitioner) has voluntarily amended its complaint (or petition), the "outset of the action" for purposes of assessing jurisdiction is the operative complaint or petition.  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) ("Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

The indispensable-at-filing rule makes sense: if an absent, nondiverse party was indispensable at the time of the operative complaint, the party's indispensability means that the complaint should not have been filed without joining that party—and had the proper parties been joined, complete diversity would not have existed at the filing of the operative complaint.  In that event, the court would have had to dismiss the complaint for lack of complete diversity.  The result must be the same if it becomes evident *after* the complaint's filing that a non-diverse party was indispensable at the time of filing.

To determine whether a party is indispensable for purposes of assessing the continued existence of diversity jurisdiction, courts apply the two-part indispensability framework set forth in Rule 19.  *See, e.g.*, *In re Olympic Mills Corp.*, 477 F.3d 1, 12 (1st Cir. 2007) (collecting the "weight of authority").  Under that framework, the court first determines whether an absent party is "required," that is whether it "claims an interest relating to the subject of the action and . . . disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i); *De Csepel v. Republic of Hungary*, 27 F.4th 736, 746 (D.C. Cir. 2022).  If the party is required but cannot be joined without destroying diversity jurisdiction, the court then considers whether the parties are indispensable, that is, whether "in equity and good conscience" the action should not proceed without that party.  Fed. R. Civ. P. 19(b).  In so doing, the court focuses on the risk of prejudice to the required party and the availability of ways to mitigate that prejudice.  *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1070–71 (D.C. Cir. 2023).

3.  The question whether Crowell has been an indispensable party since the filing of the operative petition turns on whether this Court concludes that Walgreens' operative petition to vacate the arbitral award rests on allegations that Crowell breached its fiduciary duties to, and

contract with, Walgreens (despite the petition's complete silence with respect to those claims). Crowell is not an indispensable party with respect to the only allegation on which Walgreens' petition expressly rests its claim that the arbitral award was procured by undue means — that is, its allegation that Crowell violated Rule 1.9. But this Court's September 2 Minute Order has interpreted the "undue means" allegation in Walgreens's second amended petition as encompassing contentions that Crowell violated its fiduciary duties to, and contract with, Walgreens. Walgreens subsequently confirmed that its petition rests in part on its fiduciary-duty and contract claims and that it intends to proceed on that basis.. Ex. A. Crowell therefore is an indispensable party, and the Court must dismiss this action.[5]

a. **Required party.** There can be no doubt that Crowell is a "required" party under Rule 19(a)(1)(B)(i) with respect to any contention that the arbitral award was obtained by undue means because Crowell violated its fiduciary duties and contract with Walgreens.

Crowell clearly "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B)(i). The fiduciary-duty and contract claims exclusively target Crowell's conduct, and indeed Walgreens has asserted those claims against Crowell, as defendant, in Superior Court, where the claims are still pending. Crowell has a strong interest in defending itself against Walgreens' allegations of breach.

It is also self-evident that "disposing of" the fiduciary duty and contract claims in which Crowell has an interest "may . . . as a practical matter impair or impede" Crowell's "ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Because the fiduciary-duty and contract

---

[5] The indispensability question arises in this case in a slightly different posture than usual; in the cases cited above, the question whether a party would be indispensable arose in the context of the party's intervention or substitution as a party in the action. Here, the question arises because Walgreens has clarified that its operative petition rests on its fiduciary-duty and contract claims. The slightly different context does not materially affect the analysis.

claims are the very claims that Walgreens has asserted against Crowell in Superior Court, an adverse ruling on those claims in this action, even as a subsidiary part of the undue-means analysis, would create a risk that collateral estoppel would apply against Crowell in the Superior Court.  But even assuming there is no collateral estoppel effect, Crowell's interests may well be affected "as a *practical* matter," *id*. (emphasis added), by any ruling that it breached its duties or contract.  Practical effects short of collateral estoppel, such as a ruling's persuasive effect in subsequent proceedings and its potential impacts on settlement negotiations, suffice to impair the party's interest within the meaning of Rule 19(a)(1)(B)(i).  *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (holding that non-party's interests would be impaired as a practical matter, even absent preclusion, by the precedential and practical effect of the ruling, such as a reduction in negotiating leverage and increased exposure to enforcement actions); *Acton Co. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78–79 (1st Cir. 1982) (stating in Rule 19 analysis that "[e]ven if Acton would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken Acton's bargaining position for settlement purposes. In either case, to proceed without Acton might 'as a practical matter impair or impede' Acton's ability to protect its interest in this matter." (citation omitted)).  That is so here:  Walgreens will argue in the Superior Court that the Superior Court should give an adverse ruling from this Court preclusive or (at minimum) persuasive effect, and a ruling could also affect any settlement negotiations.  Crowell is therefore a required party.

b. ***Indispensable party.***  Crowell is also an indispensable party with respect to the fiduciary-duty and contract claims because equitable considerations necessitate the conclusion that the Court should not adjudicate those claims in a suit in which Crowell is not a party.  To determine indispensability, the Court must consider the prejudice to Crowell and whether the

prejudice could be mitigated; whether a judgment rendered in Crowell's absence will be adequate, and whether Walgreens would have an adequate remedy if the Court refrained from considering the fiduciary-duty and contract claims.  *See* Fed. R. Civ. P. 19(b).

Should this Court adjudicate the fiduciary-duty and contract claims, the prejudice to Crowell would be significant, and there are no circumstances that would permit Crowell to avoid the prejudice.  *See Capitol Med. Ctr., LLC v. Amerigroup Maryland, Inc*., 677 F. Supp. 2d 188, 194 n.9 (D.D.C. 2010) ("Evaluation of the first Rule 19(b) factor overlaps considerably with the Rule 19(a) analysis." (citation and internal quotation marks omitted)).  A ruling by this Court that Crowell breached its fiduciary duties or contract would purport to resolve against Crowell *all* elements of Walgreens' corresponding pending claims against Crowell in the Superior Court. Undoubtedly, Walgreens would then contend that Crowell should be collaterally estopped from contesting all elements of the claims in the Superior Court proceeding.  Even apart from any collateral estoppel effect, the persuasive effect of this Court's resolution of the claims in Walgreens' favor could have numerous adverse consequences in Superior Court, including by undermining Crowell's ability to seek summary judgment in Superior Court; affecting the Superior Court's understanding of the elements of, and evidence relevant to, the claims; and coloring its view of any post-trial motions.

The fact Crowell has made a limited appearance before this Court does not mitigate the potential prejudice.  Although Crowell will defend itself before this Court with respect to the fiduciary-duty and contract claims should the Court decide to address them, that opportunity cannot mitigate the likely prejudicial impact on the Superior Court action.  In that action, Crowell enjoys the constitutional right to a jury trial, procedural rights to dispositive motions to dismiss and for summary adjudication, and the ability to raise affirmative defenses to liability or

mitigation of damages.  By contrast, this FAA proceeding is a *summary* proceeding for review of an arbitral award to which Walgreens and Humana are parties.  *Moses H. Cones Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27 (1983).  As a result, the Court contemplates addressing the fiduciary-duty and contract claims through briefing and an evidentiary hearing that will address numerous other topics, rather than in a plenary civil action with accompanying procedural safeguards.  Making matters worse, because discovery in the Superior Court action has not yet closed, and potential summary judgment motions and trial remain months in the future, the parties are many months away from having fully developed their respective cases in Superior Court.  Adjudicating the fiduciary-duty and contract claims here will force Crowell to litigate those claims well before the issues have become ripe for resolution in the Superior Court, effectively collapsing an entire state-law trial into the narrow confines of a summary FAA vacatur proceeding that will be decided on an incomplete record, and an adverse decision will undermine Crowell's ability to defend itself before the proper state-court forum for those claims. That is the very definition of prejudice.[6]

Of the other two equitable factors, the third—whether a judgment rendered in Crowell's absence will be adequate—does not apply here.  That factor concerns situations in which some non-joined parties may be jointly liable for the alleged harm suffered by the plaintiff.  The fourth—whether Walgreens would have an adequate remedy if this Court refrained from adjudicating the fiduciary-duty and contract claims—supports Crowell's indispensability. Walgreens has an obviously adequate remedy for its fiduciary-duty and contract claims as

---

[6] Humana's presence in the action also does not lessen the prejudice.  The fiduciary-duty and contract claims uniquely concern Crowell's conduct, and Crowell is better positioned to litigate the relevant factual issues than is Humana. *See De Csepel*, 27 F.4th at 748 (prejudice may be mitigated if existing party is "capable of" representing the absent party's interests and completely aligned).

standalone claims: adjudication in the Superior Court.  Nor can Walgreens contend that not adjudicating these claims as part of the undue means analysis would undermine the adequacy of this FAA proceeding.  Walgreens cannot show—and, indeed, has made no effort to show—that its claimed breach of fiduciary duty and breach of contract mean that the Humana arbitration award was "procured by . . . undue means" under the FAA.  9 U.S.C. § 10(a).  And even though, as discussed above, Crowell believes the Court lacks the proper authority to reach the merits of Walgreens' Rule 1.9 allegations, adjudicating those allegations does not require the Court to decide breach of fiduciary duty or breach of contract.

The Rule 19 equitable factors thus compel the conclusion that Crowell is an indispensable party with respect to the Court's adjudication of Walgreens' fiduciary-duty and contract claims.  To be clear, Crowell does not contend that is an indispensable party with respect Walgreens' allegation that Crowell violated Rule 1.9, because Rule 19's equitable considerations do not weigh dispositively in favor of indispensability with respect to that allegation.  The potential for prejudice arising out of adjudicating the Rule 1.9 issue is lower than the prejudice that will result from adjudicating the fiduciary-duty and contract claims.  As Crowell explained in its brief concerning the interaction of this case with the Superior Court case, a ruling by this Court that Crowell violated Rule 1.9 would not conclusively resolve Walgreens' fiduciary-duty and contract claims in Superior Court *even if* collateral estoppel applied to this Court's rulings, because those claims contain other elements beyond a violation of Rule 1.9.  Dkt. 90 at 11.  But if this Court addresses the fiduciary-duty and contract claims, Walgreens will doubtless contend that collateral estoppel forecloses Crowell from contesting *all* elements of the corresponding claims in Superior Court.

*          *          *

24

Because Walgreens' petition encompasses the fiduciary-duty and contract claims it has asserted against Crowell in the Superior Court, Crowell is an indispensable party to the litigation before this Court.  Crowell's participation in this action therefore destroys complete diversity, and the Court must dismiss for lack of subject matter jurisdiction.  *See Olympic Mills*, 477 F.3d at 7 ("the postfiling introduction of a nondiverse party may, in certain circumstances," including in the case of an indispensable party, "spoil the jurisdiction that obtained when the suit commenced").

## <u>CONCLUSION</u>

The Court should dismiss Walgreens' second amended petition and vacate the November evidentiary hearing.

DATED: October 2, 2023

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

/s/ Donald B. Verrilli
_____

Thomas G. Connolly (D.C. Bar No. 420416)
Thomas B. Mason (D.C. Bar No. 413345)
Jared Marx (D.C. Bar No. 1008934)
William B. Sullivan (D.C. Bar No. 1020486)
Matthew G. Miller (D.C. Bar No. 161866)
HWG LLP
1919 M Street NW, Eighth Floor
Washington, DC 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301
        tconnolly@hwglaw.com
        tmason@hwglaw.com
        jmarx@hwglaw.com
        wsullivan@hwglaw.com
        mmiller@hwglaw.com

Donald B. Verrilli (D.C. Bar No. 420434)
Ginger D. Anders (D.C. Bar No. 494471)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW,
Suite 500 E
Washington, DC 20001
Telephone: (202) 220-1100
        Donald.Verrilli@mto.com
        Ginger.Anders@mto.com


Brad D. Brian (pro hac vice)
Bethany W. Kristovich (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
        Brad.Brian@mto.com
        Bethany.Kristovich@mto.com